Gregory A. Blue
MORGENSTERN & BLUE, LLC
885 Third Avenue
New York, New York 10022
(212) 750-6776

*Attorneys for Plaintiff*



UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SALEH HOLDINGS GROUP, INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| - against - | ) |
| | ) **NOTICE OF REMOVAL** |
| ELISA DREIER, | ) |
| | ) |
| Defendant. | ) |

Plaintiff SALEH HOLDINGS GROUP, INC. ("Saleh" or "Plaintiff"), by and through its undersigned attorneys, hereby removes the claim described below to the United States District Court for the Southern District of New York pursuant to 28 U.S.C. § 1452(a).

As grounds for the removal Plaintiff states as follows:

### Parties

1.     Plaintiff is a New York Corporation with a principal place of business in the City, State, and County of New York.

2.     Defendant is an individual who, upon information and belief, resides at 425 East 58th Street, New York, New York, 10022.

1

## Facts Concerning the Underlying Claim

3.      As of October 21, 1997, Defendant was married to Marc Dreier ("MD").

4.      MD was a founding partner and principal of the law firm Dreier LLP, formerly known as Dreier & Baritz, LLP ( "Dreier LLP").  (D&B changed its name to "Dreier LLP" on or about March 6, 2003.)

5.      On or about October 21, 1997, MD, on behalf of Dreier LLP, executed a Note for the benefit of Plaintiff in the principal amount of $550,000 (the "Note").

6.      On or about October 21, 1997, Defendant, together with MD, signed a Guaranty of Payment (the "Guaranty"), in which Defendant guaranteed payment of the Note.

7.      On or about October 21, 1997, Defendant, together with MD, signed a Collateral Mortgage, in which MD and Defendant mortgaged to the Plaintiff the property at 27 Meadow Lane, Westhampton Beach, New York, 10111 (the "Westhampton Beach Property") in order to secure the indebtedness under the Note.

8.      Dreier LLP paid approximately $55,000 in principal on the Note, leaving the remainder of the principal outstanding.

9.      Pursuant to an agreement between Plaintiff on the one hand, and Dreier LLP and MD on the other, Dreier LLP was permitted to, and did, make monthly interest-only payments on the Note.

10.      Dreier LLP continued to make interest-only payments on the Note through November 2008.

**Related Proceedings**

11.     On December 4, 2008, in *United States of America v. Marc Dreier* (Case No. M18-98) (S.D.N.Y) (the "Criminal Case") the United States Attorney for the Southern District of New York filed a criminal complaint alleging that MD committed securities and wire fraud.

12.     Beginning immediately thereafter, Dreier LLP failed to make any payments on the Note, thereby defaulting on its obligations under the Note.

13.     On December 8, 2008, in *SEC v. Dreier*, Case No. 08-civ-10617 (MGC) (S.D.N.Y) (the "SEC Case"), Mark F. Pomerantz (the "Receiver") was appointed as receiver of the assets of MD, Dreier LLP, and certain affiliated entities.

14.     On December 16, 2008, the Receiver, on behalf of Dreier LLP, commenced a voluntary case, *In re Dreier, LLP*, Case No. 08-15051(SMB) (Bankr. S.D.N.Y) (the "Dreier LLP Bankruptcy Case") under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").

15.     On December 24, 2008, Hon. Jed S. Rakoff, sitting in Part I, signed in the Criminal Case a temporary pre-indictment restraining order, upon an ex part application by the Untied States, restraining MD from taking any action to transfer property belonging to him, including the Westhampton Beach Property.

16.     On December 30, 2008, the United States Trustee for the Southern District of New York appointed Sheila M. Gowan chapter 11 trustee for Dreier LLP, which appointment was approved by the Bankruptcy Court on January 9, 2009.

17.     On January 12, 2009, the Honorable Colleen McMahon, sitting in Part I, signed in the SEC Case a Consent Order for Extension of Pre-Indictment Restraining Order and Seizure of Property Pursuant to 18 U.S.C. § 982(b)(1) and 21 U.S.C. §§ 853(e) and (f).   The Consent Order

authorized the United States Marshals Service to seize and maintain custody of, among other things, the Westhampton Beach Property pending the resolution of the criminal action.

18.     On January 26, 2009, an involuntary petition was filed against MD in *In re Marc S. Dreier*, Case No. 09-10371(SMB) (Bankr. S.D.N.Y.) (the "MD Bankruptcy Case") by petitioning creditors, Sheila M. Gowan, Esq., Trustee for Chapter 11 Estate of Dreier LLP, Wachovia Bank, N.A. and Steven J. Reisman, Post-confirmation Representative of the Bankruptcy Estates of 360 networks (USA) Inc., for relief pursuant to Chapter 7 of the Bankruptcy Code.

19.     An Involuntary Summons was issued in the MD Bankruptcy Case on January 28, 2009. The Involuntary Summons was served on MD on January 30, 2009. An Order for relief was entered on February 27, 2009.

20.     On or about January 29, 2009, a grand jury in this district returned a criminal indictment (the "Indictment") that charged MD with conspiracy, securities fraud, and wire fraud.

21.     By Notice of Appointment dated March 2, 2009, Salvatore LaMonica, Esq. (the "Trustee") was appointed as the interim Chapter 7 Trustee of MD's estate and is currently acting in that capacity.

22.     On or about May 11, 2009, MD entered guilty pleas to multiple counts in the Indictment.

**The State Court Action**

23.     On or about June 2, 2009, Plaintiff commenced an action entitled *Saleh Holdings Group, Inc. v. Elisa Dreier*, Supreme Court of the State of New York, County of New York, Index No. 090601724/2009 (the "State Court Action").   The State Court Action seeks to recover from Elisa Dreier the unpaid balance on the Note (plus costs and interest) pursuant to the

Guarantee. A copy of the Summons and Complaint in the State Court Action is attached hereto as Exhibit A.

24.    On or about June 29, 2009, Defendant filed a motion to dismiss (the "Motion to Dismiss"), and for sanctions, alleging that the underlying debt was paid, and the Mortgage satisfied, as evidenced by a purported Satisfaction of Mortgage dated March 15, 2002, and recorded on or about July 23, 2002. A copy of the Defendant's papers on the Motion to Dismiss is attached hereto as Exhibit B. The Motion to Dismiss is now pending.

25.    Plaintiff contends that the Satisfaction of Mortgage is invalid, and was forged.

26.    The Satisfaction of Mortgage appears on its face to be notarized by Joel Chernov. Mr. Chernov has stated to the undersigned counsel that the notary signature that appears on the purported Satisfaction of Mortgage is not his.

**Basis for Removal**

27.    This Court has original and exclusive jurisdiction over both the MD Bankruptcy Case and the Dreier LLP Bankruptcy Case pursuant to 28 U.S.C. § 1334(a).

28.    This Court has original but not exclusive jurisdiction of all civil proceedings related to the MD Bankruptcy Case and the Dreier LLP Bankruptcy Case pursuant to 28 U.S.C. § 1334(b).

29.    This Court has exclusive jurisdiction of all the property, wherever located, of MD and Dreier LLP, and of property of the estates, pursuant to 28 U.S.C. § 1334(e). Such property includes the Westhampton Beach Property.

30.    The Westhampton Beach Property is also subject to this Court's jurisdiction by virtue of the January 12, 2009, order authorizing seizure of such property.

31.     Plaintiff's claim against Defendant is a "non-core" matter related to the MD Bankruptcy Case and the Dreier LLP Bankruptcy Case.

32.     Defendant's claim, made in her Motion to Dismiss, that the underlying debt owed by Dreier LLP was paid, and the Mortgage on the Westhampton Beach Property was satisfied, and Plaintiff's claim that the purported Satisfaction of Mortgage was forged, requires factual and legal determinations as to whether Plaintiff is a secured creditor of the MD and Dreier LLP.  The determination of the Plaintiff's status as a secured creditor of the MD estate is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

33.     In addition, Defendant's claim requires a determination of: (a) rights in property of the MD bankruptcy estate and/or that are otherwise subject to the jurisdiction of this Court; (b) Plaintiff's rights as a creditor of the MD estate; and (c) Plaintiff's rights as a creditor of the Dreier LLP estate.

34.     The adjudication in state court of Defendant's allegation that the Mortgage was satisfied, and Plaintiff's claim that it was not, will be duplicative of the same adjudication the MD and Dreier LLP bankruptcy cases, and risks inconsistent results.

35.     By virtue of the foregoing, Defendant's claim that the Mortgage was satisfied, and Plaintiff's claim that it was not, are removable to this Court pursuant to 28 U.S.C. § 1452(a).

Dated: July 13, 2009

MORGENSTERN & BLUE, LLC

By: /s/ Gregory A. Blue
    _____
    Gregory A. Blue
    885 Third Avenue
    New York, New York 10022
    (212) 750-6776

    *Attorneys for Plaintiff*

EXHIBIT A

TO NOTICE OF REMOVAL

STATE COURT
SUMMONS AND COMPLAINT

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

NEW YORK
COUNTY CLERK'S OFFICE

JUN - 3 2009

NOT COMPARED
WITH COPY FILE

—————————————————————————
SALEH HOLDINGS GROUP, INC.,

        Plaintiff,

    - against -

ELISA DREIER,

        Defendant.
—————————————————————————

)
)
)
)
)
)
)
)
)
)
)
)
)
)

Index No. 0960172409

Date Summons filed:

Plaintiff designates New York
County as the place of trial

The basis of venue is:
Plaintiff's principal place of
business

## SUMMONS

To:   **ELISA DREIER,** 425 East 58th Street, New York, New York, 10022

    **YOU ARE HEREBY SUMMONED** to answer the complaint in this action and to serve a copy of your answer on the plaintiff's attorneys within twenty (20) days after the service of this summons, exclusive of the day of service, where service is made by delivery upon you personally within the state, or within thirty (30) days after completion of service where service is made in any other manner.  In case of your failure to appear or answer, judgment will be taken against you by default for the relief demanded in the complaint.

Dated: New York, New York
      June 3, 2009

                   **MORGENSTERN & BLUE, LLC**

                   By: *Rachel K. Marcoccia*
                      Gregory A. Blue
                      Rachel K. Marcoccia
                   885 Third Avenue
                   New York, New York 10022
                   (212) 750-6776

                   *Attorneys for Plaintiff*

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

---

|                                     |     |              |
| ----------------------------------- | --- | ------------ |
| SALEH HOLDINGS GROUP, INC.,         | )   |              |
|                                     | )   |              |
|                                     | )   |              |
| Plaintiff,                          | )   | Index No.    |
|                                     | )   |              |
| - against -                         | )   |              |
|                                     | )   |              |
| ELISA DREIER,                       | )   | **COMPLAINT** |
|                                     | )   |              |
| Defendant.                          | )   |              |
|                                     | )   |              |

SALEH HOLDINGS GROUP, INC. ("Saleh" or "Plaintiff"), by and through its undersigned counsel, as and for its Complaint against ELISA DREIER ("Dreier" or "Defendant"), respectfully states as follows:

1.      Plaintiff is a New York Corporation with a principal place of business in the City, State, and County of New York.

2.      Defendant is an individual who, upon information and belief, resides at 425 East 58th Street, New York, New York, 10022.

3.      On or about October 21, 1997, the law firm of Dreier & Baritz, LLP ("D&B") executed a Note for the benefit of Plaintiff in the principal amount of $550,000 (the "Note"). A copy of the Note is attached hereto as Exhibit A.

4.      As of October 21, 1997, Defendant was married to Marc Dreier ("MD"), a partner and principal of D&B.

5.      On or about October 21, 1997, Defendant, together with MD, signed a Guaranty of Payment (the "Guaranty"), in which she guaranteed payment of the Note. A copy of the Guaranty is attached hereto as Exhibit B.

1

6.       D&B paid approximately $55,000 in principal on the Note, leaving the remainder of the principal outstanding. Pursuant to an agreement between Plaintiff on the one hand, and D&B and MD on the other, D&B was permitted to make monthly interest-only payments on the Note.

7.       On or about March 6, 2003, D&B changed its name to "Dreier LLP."

8.       D&B continued to make interest-only payments on the Note through November 2008.

9.       D&B failed to make any payments on the Note in December 2008 or thereafter.

10.      By reason of the foregoing, D&B defaulted in its obligations under the Note.

11.      By reason of the foregoing, Defendant is liable to the Plaintiff under the terms of the Guaranty.

12.      Pursuant to the terms of the Guaranty, Defendant is liable to Plaintiff for: (a) the full amount of unpaid principal; (b) accrued and unpaid interest; (c) costs, expenses, and attorney's fees incurred in connection with Plaintiff's efforts to enforce defendant's obligations under the Guaranty.

WHEREFORE, Plaintiff demands judgment against Defendant as follows:

      a.    for the principal amount outstanding under the Note, in an amount to be determined at trial but believed to be $495,000.00;

      b.    for accrued and unpaid interest under the Note from November 2008 through the date of judgment;

      c.    costs, expenses, and attorney's fees incurred in connection with Plaintiff's efforts to enforce defendant's obligations under the Guaranty; and

      d.    such other relief as the Court deems just and proper.

Dated: June 3, 2009

MORGENSTERN & BLUE, LLC

By: *Rachel K. Marcoccia*
　　Gregory A. Blue
　　Rachel K. Marcoccia
885 Third Avenue
New York, New York 10022
(212) 750-6776

*Attorneys for Plaintiff*

EXHIBIT A

TO STATE COURT COMPLAINT

# NOTE

$550,000.00

New York, New York
Dated: October 21, 1997

NOTE (hereinafter, the "Note") made this 21ST day of October, 1997, by Dreier & Baritz, LLP having an address at 45 Rockefeller Plaza, Suite 2000, New York, New York 10111 (hereinafter, the "Maker") for the benefit of **SALEH HOLDINGS GROUP, INC.**, or its successors or assigns (collectively, the "**Payee**"), having offices at 240 Central Park South, New York, New York 10019.

**FOR VALUE RECEIVED,** Maker promises to pay to the order of Payee, at 240 Central Park South, New York, New York 10019, or at such other place as Payee may designate to Maker in writing from time to time, the principal sum of Five Hundred Fifty Thousand and no/100 ($550,000.00) Dollars, together with interest thereon at the Interest Rate, calculated in the manner hereinafter set forth from and including the date of this Note to the date this Note is paid in full, as follows:

> Payments of principal in the sum of $50,000.00 on the first day of April, August and December of the first Loan Year and in the sum of $75,000.00 on the first day of April, August and December of the second Loan Year. Interest commencing on the date hereof, and ending on the last day of October, 1997 shall be due and payable on the date hereof. Commencing on November 1, 1997, and on the first day of each consecutive month thereafter, monthly payments of interest in advance on the outstanding principal balance shall be made until the Maturity Date, when the entire unpaid Debt shall immediately be due and payable. Each monthly payment shall be applied first to interest at the Interest Rate with the balance to principal.

For the purposes of this Note, these terms shall be defined as follows:

1.      The term "**Interest Rate**" as used in this Note shall mean:

> From the date hereof to the Maturity Date, the Interest Rate shall be Sixteen and One Half (16.5%) percent per annum.

2.      The term "**Principal Balance**" shall mean the outstanding principal balance of this Note from time to time.

3.      The term "**Maturity Date**" as used in this Note shall mean the earlier of October 31, 1999, or such sooner date as may be applicable pursuant to the terms hereof, at which time the entire Debt shall become due and payable.

4.     The term "**Debt**" shall mean all principal, interest, additional interest and other sums of any nature whatsoever, which may or shall become due to Payee in accordance with the provisions of this Note, the Pledge and Security Agreement or Other Security Documents.

5.     The term "**Pledge and Security Agreement**" shall mean that certain pledge and security agreement dated the date hereof between DREIER & BARITZ, LLP, pledgor and SALEH HOLDINGS GROUP, INC., pledgee securing payment of the Note.

6.     The term "**Other Security Documents**" shall mean any of the documents other than this Note or the Pledge and Security Agreement now or hereafter executed by the Maker or others, and by or in favor of Payee, which wholly or partially secure or guarantee payment of this Note, or which otherwise pertain to the Loan, including but not limited that certain guaranty by Marc Dreier and Elisa Dreier dated the date hereof and secured by that certain collateral mortgage by Marc Dreier and Elisa Dreier dated the date hereof encumbering the Premises 27 Meadow Lane, Westhampton Beach, New York.

7.     The term "**Loan Year**" shall be from November 1 of a year to November 1 of the next succeeding year for each year during which the term of this Note falls.

Interest payable under this Note shall be calculated on the basis of the actual number of days elapsed over a 30-day month and a 360-day year.

It is hereby expressly agreed that the entire Debt shall become immediately due and payable at the option of Payee on the happening of any default or event by which under the terms of this Note, the Pledge and Security Agreement or the Other Security Documents, the Debt may or shall become due and payable, and that all of the terms, covenants and provisions contained in this Note, the Pledge and Security Agreement or the Other Security Documents which are to be kept and performed by the Maker are hereby made a part of this Note to the same extent and with the same force and effect as if they were fully set forth herein. The Payee hereof may exercise this option to accelerate during any default by the Maker regardless of any prior forbearance.

If any installment of principal, interest, additional interest or other sums due hereunder or under the Pledge and Security Agreement or any Other Security Document are not paid when due the Maker shall pay to the Payee a late charge of six (6.00%) percent of such unpaid installment as a late payment charge, such late charge to be immediately due and payable without demand by the Payee.

Maker shall have the right to prepay the Principal Balance in whole only, along with interest, additional interest, and any other sums due under the Note, the Pledge and Security Agreement or the Other Security Documents upon thirty (30) days prior irrevocable written notice to Payee.

Maker acknowledges that this Note and Maker's obligations under this Note are and shall at all times continue to be absolute and unconditional in all respects. This Note sets forth the entire

agreement and understanding of Payee and Maker. Maker hereby waives presentment and demand for payment, notice of dishonor, protest or notice of protest of this Note.

This Note shall be the joint and several obligation of all makers, sureties, guarantors and endorsers, and shall be binding upon them and their successors and assigns. If any payment under this Note is not made when due, Maker agrees to pay all costs of collection when incurred, including reasonable attorneys' fees, which costs shall be added to the amount due under this Note and shall be receivable therewith.

The indebtedness herein evidenced by this Note is secured by the Pledge and Security Agreement and Other Security Documents.

The terms of this Note shall be governed by and construed in accordance with the laws of the State of New York.

Maker does hereby agree that upon the occurrence of an Event of Default (as such capitalized term is defined in the Pledge and Security Agreement) or upon the failure of Maker to pay the Debt in full on the Maturity Date, Payee shall be entitled to receive and Maker shall pay interest on the entire Debt at the rate of twenty-four (24%) percent per annum or at the maximum rate of interest which Maker may by law pay, whichever is lower (the "**Default Rate**"), to be computed from the occurrence of the Event of Default until the actual receipt and collection of the Debt. This charge shall be added to the Debt, and shall be deemed secured by the Pledge and Security Agreement and Other Security Documents. This clause, however, shall not be construed as an agreement or privilege to extend the date of the payment of the Debt, nor as a waiver of any other right or remedy accruing to Payee by reason of the occurrence of any Event of Default.

This Note is subject to the express condition that at no time shall Maker be obligated or required to pay interest on the Principal Balance at a rate which could subject Payee to either civil or criminal liability as a result of being in excess of the maximum rate which Maker is permitted by law to contract or agree to pay. If, by the terms of this Note, Maker is at any time required or obligated to pay interest on the Principal Balance at a rate in excess of such maximum rate, the rate of interest under this Note shall be deemed to be immediately reduced to such maximum rate, and interest payable hereunder shall be computed at such maximum rate and the portion of all prior interest payments in excess of such maximum rate shall be applied and shall be deemed to have been payments in reduction of the Principal Balance.

No delay on the part of Payee in exercising any right or remedy under this Note, the Pledge and Security Agreement or the other Security Documents or failure to exercise the same shall operate as a waiver in whole or in part of any such right or remedy. No notice to or demand on Maker shall be deemed to be a waiver of the obligation of Maker or of the right of Payee to take further action without further notice or demand as provided in this Note, the Pledge and Security Agreement and other Security Documents.

Maker (and the undersigned representative of Maker, if any) represents that Maker has full power, authority and legal right to execute and deliver this Note and that the debt hereunder constitutes a valid and binding obligation of Maker.

All notices to be given under this Note shall be given in the same manner as provided in the Pledge and Security Agreement.

This Note, and any provisions hereof, may not be modified, amended, waived, extended, changed, discharged or terminated orally or by any act or failure to act on the part of Maker or Payee, but only by an agreement in writing signed by the party against whom enforcement of any modification, amendment, waiver, extension, change, discharge or termination is sought.

Maker hereby irrevocably and unconditionally waives, and Payee, by its acceptance of this Note, irrevocably and unconditionally waives, any and all right to trial by jury in any action, suit or counterclaim arising in connection with, out of or otherwise relating to this Note, the Pledge and Security Agreement or the Other Security Documents.

Maker, to the full extent permitted by law, hereby knowingly, intentionally and voluntarily, with and upon the advice of competent counsel, (a) submits to personal jurisdiction in the State of New York over any suit, action or proceeding by any person arising from or relating to this Note or the Pledge and Security Agreement, (b) agrees that any such action, suit or proceeding may be brought in any State or Federal Court of competent jurisdiction sitting in New York County, New York, (c) submits to the jurisdiction of such courts, and (d) to the fullest extent permitted by law, agrees that Maker will not bring any action, suit or proceeding in any other forum (but nothing herein shall affect the right of the holder of this Note to bring any action, suit or proceeding in any other forum). Maker further consents and agrees to service of any summons, complaint or other legal process in any such suit, action or proceeding by registered or certified U.S. Mail, postage prepaid, to Maker at the address set forth on page 1 hereof, and consents and agrees that such service shall constitute in every respect valid and effective service (but nothing herein shall affect the validity or effectiveness of process served in any other manner permitted by law).

**IN WITNESS WHEREOF,** Maker has duly executed this Note the day and year first above written.

DREIER & BARITZ, LLP

By: _____

Title: _____

STATE OF NEW YORK     )
                      )     ss.:
COUNTY OF NEW YORK    )

On the _21_ day of _October_, _1997_ before me personally came _Marc Dreier_ to me known, who, being by me duly sworn, did depose and say that he resides at _27 Meadow Lane, Worthington, NY_; that he is a Partner of Dreier & Baritz, LLP, the limited liability partnership described in and which executed the foregoing instrument; and that he signed his name thereto for and on behalf of said limited liability partnership.

_____
                Notary Public

Ro__ , ____, State of New York
No. 30-5305425
Qualified in Nassau County
Commission Expires March 30, 19___

EXHIBIT B

TO STATE COURT COMPLAINT

# GUARANTY OF PAYMENT

**GUARANTY OF PAYMENT** dated as of the 21ST day of October 1997, made by MARC DREIER having an address at 27 Meadow Lane, Westhampton Beach, New York 11978 and ELISA DREIER having an address at 27 Meadow Lane, Westhampton Beach, New York 11978, (collectively referred to as the **"undersigned"**), for the benefit of **SALEH HOLDINGS GROUP, INC.**, a New York corporation having offices at 240 Central Park South, New York, New York 10019 (hereinafter referred to as **"Lender"**).

## W I T N E S S E T H :

WHEREAS, DREIER & BARITZ, LLP (hereinafter referred to as **"Borrower"**), has applied to Lender for a loan in the principal sum of Five Hundred Fifty Thousand ($550,000.00) Dollars (hereinafter referred to as the **"Loan"**), which loan will be evidenced by the Note (described in Exhibit A hereto) and secured by the Pledge and Security Agreement (described in Exhibit A hereto);

WHEREAS, Lender is willing to make the Loan to Borrower only if the undersigned executes and delivers this Guaranty and guarantees payment to Lender of the Debt (as herein defined) in the manner hereinafter provided;

NOW, THEREFORE, in consideration of the premises and other good and valuable consideration, the receipt of which is hereby acknowledged, and in order to induce Lender to make the Loan to Borrower, the undersigned hereby covenants and agrees with Lender as follows:

1.  The undersigned hereby jointly and severally guarantees, absolutely and unconditionally, to Lender the payment of the Debt. The term **"Debt"** as used in this Guaranty shall mean all principal, interest, additional interest and other sums of any nature whatsoever which may or shall become due and payable pursuant to the provisions of the Note or the Pledge and Security Agreement.

2.  The undersigned agrees that, with or without notice or demand, the undersigned will reimburse Lender for all costs and expenses (including, without limitation, reasonable attorney's fees) incurred by Lender in connection with the collection of the Debt or any portion thereof or in any action or proceeding brought by Lender to enforce the obligations of the undersigned under this Guaranty.

3.  All moneys available to Lender for application in payment or reduction of the Debt may be applied by Lender in such manner and in such amounts and at such time or times and in such order, priority and proportions and to the payment or reduction of such portion of the Debt as Lender may elect.

4.  The undersigned hereby consents that from time to time, before or after any default by Borrower, with or without further notice to or assent from the undersigned, any security at any

time held by or available to Lender for any obligation of Borrower, or any security at any time held by or available to Lender for any obligation of any other person or party secondarily or otherwise liable for all or any portion of the Debt, may be exchanged, surrendered or released and any obligation of Borrower, or of any such other person or party, may be changed, altered, renewed, extended, continued, surrendered, compromised, waived or released in whole or in part, or any default with respect thereto waived, and Lender may fail to set off and may release, in whole or in part, any balance of any deposit account or credit on its books in favor of Borrower, or of any such other person or party, and may extend further credit in any manner whatsoever to Borrower, and generally deal with Borrower or any such security or other person or party as Lender may see fit; and the undersigned shall remain bound under this Guaranty notwithstanding any such exchange, surrender, release, change, alteration, renewal, extension, continuance, compromise, waiver, inaction, extension of further credit or other dealing.

5.     The undersigned hereby waives (a) notice of acceptance of this Guaranty and of the making of the Loan or any advance thereof by Lender to Borrower; (b) presentment and demand for payment of the Debt or any portion thereof; (c) protest and notice of dishonor or default to the undersigned or to any other person or party with respect to the Debt or any portion thereof; (d) all other notices to which the undersigned might otherwise be entitled; and (e) any demand for payment under this Guaranty.

6.     This is a Guaranty of payment and not of collection and the undersigned further waives any right to require that any action be brought against Borrower or any other person or party or to require that resort be had to any security or to any balance of any deposit account or credit on the books of Lender in favor of Borrower or any other person or party.

7.     Each reference herein to Lender shall be deemed to include its successors and assigns, in whose favor the provisions of this Guaranty shall also inure. Each reference herein to the undersigned shall be deemed to include the heirs, executors, administrators, legal representatives, successors and assigns of the undersigned, all of whom shall be bound by the provisions of this Guaranty, provided, however, that the undersigned shall in no event or under any circumstance have the right without obtaining the prior written consent of Lender to assign or transfer the obligations and liabilities of the undersigned under this Guaranty, in whole or in part, to any other person, party or entity.

8.     The term **"undersigned"** as used herein shall, if this Guaranty is signed by more than one party, mean the **"undersigned and each of them"** and each undertaking herein contained shall be their joint and several undertaking, provided, however, that in the next succeeding paragraph hereof the term **"undersigned"** shall mean the **"undersigned or any of them"**. If any party hereto shall be a partnership, the agreements and obligations on the part of the undersigned herein contained shall remain in force and application notwithstanding any changes in the individuals composing the partnership and the term **"undersigned"** shall include any altered or successive partnerships but the predecessor partnerships and their partners shall not thereby be released from any obligations or liability hereunder.

9.    No delay on the part of Lender in exercising any right or remedy under this Guaranty or failure to exercise the same shall operate as a waiver in whole or in part of any such right or remedy. No notice to or demand on the undersigned shall be deemed to be a waiver of the obligation of the undersigned or of the right of Lender to take further action without notice or demand as provided in this Guaranty.

10.    This Guaranty may be modified, amended, changed or terminated only by an agreement in writing signed by Lender and the undersigned. No waiver of any term, covenant or provision of this Guaranty shall be effective unless given in writing by Lender and if so given by Lender shall be effective only in the specific instance in which given.

11.    The undersigned acknowledges that this Guaranty and the obligations of the undersigned under this Guaranty are and shall at all times continue to be absolute and unconditional in all respects, and shall at all times be valid and enforceable irrespective of any other agreements or circumstances of any nature whatsoever which might otherwise constitute a defense to this Guaranty and the obligations of the undersigned under this Guaranty or the obligations of any other person or party (including, without limitation, Borrower) relating to this Guaranty or otherwise with respect to the Loan. This Guaranty sets forth the entire agreement and understanding of Lender and the undersigned, and the undersigned absolutely, unconditionally and irrevocably waives any and all right to assert any defense, setoff, counterclaim or cross-claim of any nature whatsoever with respect to this Guaranty or the obligations of the undersigned under this Guaranty or the obligations of any other person or party (including, without limitation, Borrower) relating to this Guaranty or otherwise with respect to the Loan, or in any action or proceeding brought by Lender to collect the Debt, or any portion thereof, or to enforce the obligations of the undersigned under this Guaranty. The undersigned acknowledges that no oral or other agreements, understandings, representations or warranties exist with respect to this Guaranty or with respect to the obligations of the undersigned under this Guaranty, except those specifically set forth in this Guaranty.

12.    The undersigned hereby irrevocably and unconditionally waives, and Lender by its acceptance of this Guaranty irrevocably and unconditionally waives, any and all right to trial by jury in any action, suit or counterclaim arising in connection with, out of or otherwise relating to this Guaranty.

13.    Notwithstanding any payments made by the undersigned pursuant to the provisions of this Guaranty, the undersigned shall have no right of subrogation in and to the Note or the Pledge and Security Agreement or any other security held by or available to Lender for the Debt or the payment thereof until the Debt has been paid in full to Lender and all preference periods have lapsed.

14.    Any notice, request or demand given or made under this Guaranty shall be in writing and shall be hand delivered or sent by Federal Express or other reputable courier service or by postage prepaid registered or certified mail, return receipt requested, and shall be deemed given (i) when received at the following addresses if hand delivered or if sent by Federal Express or other reputable courier service, and (ii) three (3) business days after being postmarked and addressed as follows if sent by registered or certified mail, return receipt requested:

If to Lender:                    Saleh Holdings Group, Inc.
                                 240 Central Park South
                                 New York, New York 10019
        Attention:               Joseph Saleh, President

With a copy to:                  Goldberg Weprin & Ustin LLP
                                 1501 Broadway, 22nd Floor
                                 New York, New York 10036
        Attention:               Andrew W. Albstein, Esq.

If to the undersigned:           Marc Dreier
                                 27 Meadow Lane
                                 Westhampton Beach, New York 10111

                                 Elisa Dreier
                                 27 Meadow Lane
                                 Westhampton, New York 10111

Each party to this Guaranty may designate a change of address by notice given to the other party fifteen (15) days prior to the date such change of address is to become effective.

15.     This Guaranty is, and shall be deemed to be, a contract entered into under and pursuant to the laws of the State of New York and shall in all respects be governed, construed, applied and enforced in accordance with the laws of the State of New York. No defense given or allowed by the laws of any other state or country shall be interposed in any action or proceeding hereon unless such defense is also given or allowed by the laws of the State of New York.

16.     The undersigned agrees to submit to personal jurisdiction in the State of New York in any action or proceeding arising out of this Guaranty and, in furtherance of such agreement, the undersigned hereby agrees and consents that without limiting other methods of obtaining jurisdiction, personal jurisdiction over the undersigned in any such action or proceeding may be obtained within or without the jurisdiction of any court located in New York and that any process or notice of motion or other application to any such court in connection with any such action or proceeding may be served upon the undersigned by registered or certified mail to or by personal service at the last known address of the undersigned, whether such address be within or without the jurisdiction of any such court.

17.     No exculpatory provisions contained in the Note or the Pledge and Security Agreement or in any other document or instrument executed and delivered in connection therewith or otherwise with respect to the Loan shall in any event or under any circumstance be deemed or construed to modify, qualify, or affect in any manner whatsoever the personal recourse obligations and liabilities of the undersigned under this Guaranty.

18.    The undersigned agrees that, in the event that the undersigned shall (i) file with any bankruptcy court of competent jurisdiction or be the subject of any petition under Title 11 of the U.S. Code, as amended ("Bankruptcy Code"), (ii) be the subject of any order for relief issued under the Bankruptcy Code, (iii) file or be the subject of any petition seeking any reorganization, arrangement, composition, readjustment, liquidation, dissolution, or similar relief under any present or future federal or state act or law relating to bankruptcy, insolvency, or other relief for debtors, (iv) have sought or consented to or acquiesced in the appointment of any Trustee, receiver, conservator, or liquidator, or(v) be the subject of any order, judgment or decree entered by any court of competent jurisdiction approving a petition filed against such party for any reorganization, arrangement, composition, readjustment, liquidation, dissolution, or similar relief for debtors, Lender shall thereupon be entitled and the undersigned irrevocably consents to immediate and unconditional relief from any automatic stay imposed by Section 362 of the Bankruptcy Code, or otherwise, on or against the exercise of the rights and remedies otherwise available to Lender as provided for herein, in the Note, other loan documents delivered in connection herewith and as otherwise provided by law, and the undersigned hereby irrevocably waives any right to object to such relief and will not contest any motions by Lender seeking relief from the automatic stay, and acknowledges that no reorganization in bankruptcy is feasible.

19.    The undersigned waives its exclusive right pursuant to Section 1121(b) of the Bankruptcy Code to file a plan of reorganization and irrevocably consents to Lender filing a plan immediately upon the entry of an order for relief if an involuntary petition is filed against the undersigned or upon the filing of a voluntary petition by the undersigned. In the event that Lender shall move pursuant to Section 11221 (d) of the Bankruptcy Code for an order reducing the 120 day exclusive period, the undersigned shall not object to any such motion and the undersigned shall waives any rights they may have pursuant to Section108(b) of the Bankruptcy Code.

20.    The obligations and liabilities of the undersigned under this Guaranty are in addition to the obligations and liabilities of the undersigned under the Other Guaranties (as hereinafter defined). The discharge of the obligations and liabilities of the undersigned under any one or more of the Other Guaranties by the undersigned or by reason of operation of law or otherwise shall in no event or under any circumstance constitute or be deemed to constitute a discharge, in whole or in part, of the obligations and liabilities of the undersigned under this Guaranty. Conversely, the discharge of the obligations and liabilities of the undersigned under this Guaranty by Lender or by reason of operation of law or otherwise shall in no event or under any circumstance constitute or be deemed to constitute a discharge, in whole or in part, of the obligations and liabilities of the undersigned under any of the Other Guaranties. The term **"Other Guaranties"** as used herein shall mean any other guaranty of payment, guaranty of performance, completion guaranty, indemnification agreement or other guaranty or instrument of personal recourse obligation or undertaking of any nature whatsoever (other than this Guaranty) now or hereafter executed and delivered by the undersigned to Lender in connection with the Loan.

21.    This Guaranty is secured by that certain Collateral Mortgage of even date herewith encumbering premises known as 27 Meadow Lane, Westhampton Beach, New York (the "Property") made by the undersigned to the Lender.

22. This Guaranty may be executed in one or more counterparts by some or all of the parties hereto, each of which counterparts shall be an original and all of which together shall constitute a single agreement of guaranty. The failure of any party listed below to execute this Guaranty, or any counterpart hereof, shall not release any other party from his obligations hereunder.

**IN WITNESS WHEREOF,** the undersigned have duly executed this Guaranty the day and year first above set forth.

_____
MARC DREIER

_____
ELISA DREIER

STATE OF NEW YORK     )
                      ) ss.:
COUNTY OF NEW YORK    )


On the _21st_ day of _October_, 199_7_, before me personally came _Marc S. Dreier_, to me known to be the individual(s) described in and who executed the foregoing instrument, and he/she/they acknowledged to me that he/she/they executed the same.

_____
NOTARY PUBLIC

JOEL A. CHERNOV
NOTARY PUBLIC, State of New York
No. 31-4811520
Qualified in New York County
Commission Expires February 28, 1997

STATE OF NEW YORK     )
                      ) ss.:
COUNTY OF NEW YORK    )


On the _21st_ day of _October_, 199_7_, before me personally came _Elisa Dreier_, to me known to be the individual(s) described in and who executed the foregoing instrument, and he/she/they acknowledged to me that he/she/they executed the same.

_____
NOTARY PUBLIC

JOEL A. CHERNOV
NOTARY PUBLIC, State of New York
No. 31-4811520
Qualified in New York County
Commission Expires February 28, 1997

# EXHIBIT A

Note:                    The term "Note" as used in this Guaranty shall mean a certain Note in the
                         principal amount of $550,000.00 of even date herewith, given by Borrower
                         to Lender.

Pledge and               The term "Pledge and Security Agreement" as used in this Guaranty shall
Security Agreement       mean that certain Pledge and Security Agreement in the principal sum of
                         $550,000.00 of even date herewith, given by Borrower to Lender constituting
                         a first lien on the personal property, and accounts receivable of Dreier &
                         Baritz, LLP more particularly described therein.

EXHIBIT B

TO NOTICE OF REMOVAL

DEFENDANT'S MOTION TO DISMISS

**SUPREME COURT OF THE STATE OF NEW YORK**
**COUNTY OF NEW YORK**
------------------------------------------------------------------------X

SALEH HOLDINGS GROUP, INC.,

                                   Plaintiff,                Index No. 09601724/09

          -against-                           **NOTICE OF MOTION**

ELISA DREIER,

                                 Defendant.
------------------------------------------------------------------------X

       **PLEASE TAKE NOTICE** that upon the annexed Affirmation of Richard A.

Roth, Esq., dated June 29, 2009 and the exhibits annexed thereto, together with the

accompanying Memorandum of Law, dated June 29, 2009 and all pleadings and prior

proceedings herein, Defendant will move this Court at the Submissions Part, at the New York

County Courthouse, 60 Centre Street, Room 130, New York, New York on the 23rd day of July,

2009, at 9:30 a.m., or as soon thereafter as counsel can be heard, for an order granting

Defendants' motion to dismiss the Complaint pursuant to CPLR §§ 3211(1) and (5), and for

sanctions against Plaintiff and its counsel, Gregory A. Blue, Esq. and Rachel K. Marcoccia, Esq.

pursuant to NYCRR § 130-1.1.(2009).

       **PLEASE TAKE FURTHER NOTICE** that pursuant to CPLR §§ 2214 and 2103(b),

responsive papers, if any, are to be served so as to be received by the undersigned at least seven

(7) days prior to the return date of this motion.

Dated: New York, New York
      June 29, 2009

                                     THE ROTH LAW FIRM, PLLC

By: _____
                        Richard A. Roth
                545 Fifth Avenue, Suite 960
                New York, New York 10017
                Tel: (212) 542-8882
                *Attorneys for Defendant*

To:    Gregory A. Blue, Esq.
       Rachel K. Marcoccia, Esq
       Morgenstern & Blue, LLC
       885 Third Avenue
       New York, NY 10022

**SUPREME COURT OF THE STATE OF NEW YORK**
**COUNTY OF NEW YORK**
-------------------------------------------------------------------X
SALEH HOLDINGS GROUP, INC.,

                                    Plaintiff,                    Index No. 09601724/09

          -against-

ELISA DREIER,

                                    Defendant.
-------------------------------------------------------------------X

## AFFIRMATION OF RICHARD A. ROTH, ESQ.
## IN SUPPORT OF DEFENDANT'S
## MOTION TO DISMISS THE COMPLAINT AND FOR SANCTIONS

      RICHARD A. ROTH, ESQ., an attorney duly admitted to practice before the Courts of

this State, pursuant to CPLR 2106, affirms the following to be true under penalties of perjury:

      1.    I am a member of the Bar of the State of New York and founder of The Roth Law

Firm, PLLC, counsel for Defendant Elisa Dreier.

      2.    Annexed hereto as Exhibit A is a true and correct copy of a Satisfaction of

Mortgage, dated March 15, 2001, recorded in the Records Office of the Suffolk Court Clerk on

July 23, 2002.

      3.    Annexed hereto as Exhibit B is a true and correct copy of UCC-3 Financing

Statement Amendment, filed with the Suffolk County Clerk on February 20, 2002.

      4.    Annexed hereto as Exhibit C is a true and correct copy of a letter from Richard A.

Roth, Esq. (of The Roth Law Firm, PLLC) to Gregory A. Blue, Esq. (of Morgenstern & Blue,

LLC), dated June 23, 2009.

DATED: June 29, 2009

                                            _____
                                              Richard A. Roth

# EXHIBIT A

THIS IS A LEGAL INSTRUMENT AND SHOULD BE EXECUTED UNDER SUPERVISION OF AN ATTORNEY.

# Know all Men by these Presents,

**THAT** SALEH HOLDINGS GROUP, INC., 240 Central Park South, New York, NY 10019

**DO HEREBY CERTIFY** that the following Mortgage **IS PAID**, and do hereby consent that the same be discharged of record.

Mortgage dated the 21st day of October 1997, made by Marc Dreier and Elisa Dreier

to Saleh Holdings Group, Inc.

DIST-
0905

In the principal sum of $550,000.00 and recorded on the 20th day of February 19 98 In (Liber) (Record Liber) (Reel) 19301 of Section 010.00 of Mortgages, page 759 In the office of the Suffolk County Clerk

SEC.
010.00

> 27 Meadow Lane
> Westhampton Beach
> Suffolk County
> Section 010.00
> Block 01.00
> Lot 012.000
> DIST- 0905

BLK
01.00

LOT
012.00

JOEL A. CHERNOV
Notary Public, State of New York
No. 02CH4811520
Qualified in New York County
Commission Expires Feb. 28, 2002

which mortgage has not been discharged of record Saleh Holdings Group, Inc.

Dated the 15th day of March, 2001

In presence of: *Joseph J.M. Saleh* (Pres) L.S.

Joseph J.M. Saleh, Pres. L.S.

State of New York
County of Nassau

On the 15th day of March in the year 2001 before me, the undersigned a Notary Public in and for said State, personally appeared Joseph J.M. Saleh personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his capacity, and that by his signature on the instrument, the individual or the person upon behalf of which the individual acted, executed the instrument.

*Joel Chernov*
JOEL A. CHERNOV







### SUFFOLK COUNTY CLERK
### RECORDS OFFICE
### RECORDING PAGE

Type of Instrument: SATISFACTION OF MORTGAGE/MOP    Recorded:    07/23/2002
Number of Pages: 2                                             At:            11:12:06 AM
                                                                 LIBER:       M00020145
                                                                   PAGE:        588

District:           Section:            Block:           Lot:
0905                010.00                01.00              012.000

### EXAMINED AND CHARGED AS FOLLOWS

Received the Following Fees For Above Instrument

| | | Exempt | | | Exempt |
|---|---|---|---|---|---|
| Page/Filing | $6.00 | NO | Handling | $5.00 | NO |
| COE | $5.00 | NO | NYS SURCHG | $15.00 | NO |
| Notation | $1.00 | NO | Cert.Copies | $0.00 | NO |
| RPT | $30.00 | NO | SCTM | $0.00 | NO |
| | | | Fees Paid | $62.00 | |

THIS PAGE IS A PART OF THE INSTRUMENT

Edward P.Romaine
County Clerk, Suffolk County

Number of pages  2

TORRENS

Serial # _____

Certificate # _____

Prior Ctf. # _____

| Deed / Mortgage Instrument | Deed / Mortgage Tax Stamp | Recording / Filing Stamps |
|---|---|---|

| 4 | FEES |
|---|---|

Page / Filing Fee  6 —

Handling  5 —

TP-584 _____

Notation  2N  1 —

EA-52 17 (County) _____  Sub Total  12.00

EA-5217 (State) _____

R.P.T.S.A.  30 00

Comm. of Ed.  5 00

Affidavit _____

Certified Copy _____

Reg. Copy _____

Other  15 —   Sub Total  50 00

GRAND TOTAL  62.00

Mortgage Amt. _____

1 Basic Tax _____

2 Additional Tax _____

Sub Total _____

Spec. Asst
or
Spec. Add. _____

TOT. MTG. TAX _____

Dual Town _____ Dual County _____
Held for Apportionment

Transfer Tax _____

Mansion Tax
The property covered by this mortgage is or
will be improved by a one or two family
dwelling only.
YES _____ or NO _____
If NO, see appropriate tax clause on page #
of this instrument.

| 5 | Real Property Tax Service Agency Verification | | | | 6 | Community Preservation Fund |
|---|---|---|---|---|---|---|
| | Dist. | Section | Block | Lot | | Consideration Amount $ |
| | 0905 | 010.00 | 01.00 | 012.00 | | CPF Tax Due $ |

Date 7/18/02

Initials  mo

| | | Improved |
| | | Vacant Land |

| 7 | Satisfactions/Discharges/Releases List Property Owners Mailing Address |
|---|---|

RECORD & RETURN TO:

MARC S. DREIER
ELISA DREIER
425 EAST 58TH STREET
APT. 37A
NY, NY 10022

| (1) |
| (1) |
| (1) |

| 8 | Title Company Information |
|---|---|
| Co. Name | CHOICE ABSTRACT |
| Title # | 57519 |

| 9 | Suffolk County Recording & Endorsement Page |
|---|---|

This page forms part of the attached  SAT of MORTGAGE  made by:
(SPECIFY TYPE OF INSTRUMENT)

SALCH HOLDINGS GROUP, INC.   The premises herein is situated in
SUFFOLK COUNTY, NEW YORK.

_____   In the Township of  SOUTHAMPTON.

TO   In the VILLAGE

MARC DREIER &   _____

ELISA DREIER   or HAMLET of  WESTHAMPTON BEACH

BOXES 5 THRU 9 MUST BE TYPED OR PRINTED IN BLACK INK ONLY PRIOR TO RECORDING OR FILING.

(OVER)

# EXHIBIT B

Jun 13 09 09:54a                                                                                              p.3

**FILED**

**PM**

2002 FEB 20 AM 2:59

**02 - 00753**

SUFFOLK COUNTY CLERK

# UCC FINANCING STATEMENT AMENDMENT
FOLLOW INSTRUCTIONS (front and back) CAREFULLY

**A. NAME & PHONE OF CONTACT AT FILER [optional]**

**B. SEND ACKNOWLEDGMENT TO: (Name and Address)**

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1a. INITIAL FINANCING STATEMENT FILE #  98-02743  Filed 2-18-98

1b. ☑ This FINANCING STATEMENT AMENDMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS.

2. ☑ **TERMINATION:** Effectiveness of the Financing Statement identified above is terminated with respect to security interest(s) of the Secured Party authorizing this Termination Statement.

3. ☐ **CONTINUATION:** Effectiveness of the Financing Statement identified above with respect to security interest(s) of the Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law.

4. ☐ **ASSIGNMENT (full or partial):** Give name of assignee in item 7a or 7b and address of assignee in item 7c and also give name of assignor in item 9.

5. **AMENDMENT (PARTY INFORMATION):** This Amendment affects ☐ Debtor or ☐ Secured Party of record. Check only one of these two boxes.
Also check one of the following three boxes and provide appropriate information in items 6 and/or 7.

☐ CHANGE name and/or address  ☐ DELETE name  ☐ ADD name

6. **CURRENT RECORD INFORMATION:**

6a. ORGANIZATION'S NAME

6b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX

7. **CHANGED (NEW) OR ADDED INFORMATION:**

7a. ORGANIZATION'S NAME

7b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX

7c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY

7d. TAX ID #: SSN OR EIN | ADD'L INFO RE ORGANIZATION DEBTOR | 7e. TYPE OF ORGANIZATION | 7f. JURISDICTION OF ORGANIZATION | 7g. ORGANIZATIONAL ID #, if any ☐ NONE

8. **AMENDMENT (COLLATERAL CHANGE):** check only one box.
Describe collateral ☐ deleted or ☐ added, or give entire ☐ restated collateral description, or describe collateral ☐ assigned.

9. **NAME OF SECURED PARTY OF RECORD AUTHORIZING THIS AMENDMENT**

9a. ORGANIZATION'S NAME  Saleh Holdings Group, Inc.

9b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX

10. OPTIONAL FILER REFERENCE DATA

FILING OFFICE COPY — NATIONAL UCC FINANCING STATEMENT AMENDMENT (FORM UCC3) (REV. 07/29/98)

# UCC FINANCING STATEMENT AMENDMENT ADDENDUM
FOLLOW INSTRUCTIONS (front and back) CAREFULLY

11. INITIAL FINANCING STATEMENT FILE # (same as item 1a on Amendment form)

**98-02743  Filed 2/18/98**

12. NAME OF PARTY AUTHORIZING THIS AMENDMENT (same as item 9 on Amendment form)

12a. ORGANIZATION'S NAME

**Saleh Holdings Group, Inc.**

OR

| 12b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME,SUFFIX |
|---|---|---|
| | | |

13. Use this space for additional information

**02 - 00753**

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

Secured Party: Saleh Holdings Group, Inc.

Debtor: Marc S. Dreier & Elisa Dreier

*Ro-Marc Dreier*

Dist. - 0905
Sec. - 010.00
Block - 01.00
Lot - 012.00

Premises: 27 Meadow Lane, West Hampton Beach, New York

*Choice Abstract Corp.* ✓

FILING OFFICE COPY—NATIONAL UCC FINANCING STATEMENT AMENDMENT ADDENDUM (FORM UCC3Ad) (REV. 07/29/98)

# EXHIBIT C

# The Roth Law Firm, PLLC

545 Fifth Avenue, Suite 960
New York, NY 10017
Tel.: (212) 542 8882 Facsimile: (212) 542 8883

June 23, 2009

<u>By Facsimile (212) 750-3128</u>
Gregory A. Blue, Esq.
Morgenstern & Blue, LLC
885 Third Avenue
New York, New York 10022

Re:  <u>Saleh Holdings Group, Inc. v. Elisa Dreier, Index No. 09601724/09</u>

Dear Mr. Blue:

This shall confirm our telephone conversations of last week and June 22, 2009 wherein we informed you that we are in possession of a Summons and Complaint, signed by you, as attorneys for Saleh Holdings Group, Inc. ("Plaintiff") which, as we described, we believe to be wholly frivolous for several reasons. This letter shall therefore serve as notice to withdraw the Complaint pursuant to 22 NYCRR § 130-1.1(c) (2009). If you fail to do so by Friday, June 26, 2009, we shall, along with Defendant's motion to dismiss, seek sanctions, including all attorneys' fees and costs, against you, your firm and your client.

First, the Complaint alleges damages as against Elisa Dreier, individually, solely as an alleged Guarantor of a Note (dated October 21, 1997) for $550,000, which according to the terms thereof, became due and owing at the very latest on October 31, 1999 (defined as the "Maturity Date" in the Note). As we are sure you are aware, under New York law, the statute of limitations on a breach of contract is six (6) years. See, CPLR 213(2). Giving your client every benefit of the doubt, any claim for breach of the Guaranty must have been filed by October 31, 2005 -- almost three and half years ago. On this basis alone, your client's claim is barred and pursuing this litigation, in light of that fact, is frivolous.

Second, this shall confirm we informed you that, *according to your own client,* the $550,000 obligation underlying the Guaranty was satisfied on or before March 15, 2001. Specifically, a title search of the property collateralizing the obligation reveals that your client *publicly filed* a document, a Satisfaction of Mortgage, confirming the obligation has been fully paid. I emailed that document to you during our first telephone conversation. Another copy of that document is attached hereto. It is clear on its face: your client certified that the mortgage was "PAID" and consented that it be discharged of record. In addition, your very own client filed a UCC-3 Financing Statement Amendment terminating his security interest in

the property on February 20, 2002. The Complaint, therefore, which is belied by the underlying documents executed by your client, is wholly without basis.

Third, we informed you that the Guarantee was never signed by the Defendant; it is *not* her signature. As you are presumably aware, Marc Dreier, Esq., the principal of the underlying obligation, pled guilty to one of the most massive frauds in legal history which was predicated on, among other things, the forging of signatures on a multitude of documents.

Finally, you have informed us that monies have been paid by Mr. Dreier over the past few years. Be advised that we are also looking into whether it is our obligation to notify the Trustee in the Dreier Chapter 7 and 11 bankruptcy proceedings that those monies paid to your client were not only in frustration of all of the other creditors to the bankrupt estate (i.e. fraudulent conveyances), but were for a debt that had already been satisfied and was therefore not due and owing. The Trustee, as a fiduciary, will thus be forced to recoup all of those payments from your client with interest.

It is painfully obvious by your Complaint that it is wholly without basis in fact and law. We therefore demand that you immediately withdraw the action with prejudice against our client. In the event you fail to do so, we will have no choice but to seek all appropriate monies, including the imposition of sanctions pursuant 22 NYCRR § 130-1.1 (2009).

Be guided accordingly.

Very truly yours,

Richard A. Roth

cc: Elisa Dreier, Esq.

## AFFIRMATION OF SERVICE

STATE OF NEW YORK  )
         ) ss.:
COUNTY OF NEW YORK )

    Jordan M. Kam, Esq. affirms the following:

1.    I am over the age of 21 years, am not a party to the action, and reside in New York, New York.

2.    On June 29, 2009, I served a copy of the foregoing, by First Class mail, upon counsel at the following address listed below:

> Gregory A. Blue, Esq.
> Rachel K. Marcoccia, Esq
> Morgenstern & Blue, LLC
> 885 Third Avenue
> New York, NY 10022

                _____
                Jordan M. Kam